IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR No.: 3:20-453-JFA |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| WILLIE EDWARD SIMMONS | ) | |
| _____ | ) | |

This matter is before the court on the defendant's *pro se* motion for a reduction in his sentence pursuant to the First Step Act of 2018 and 18 U.S.C. § 3582(c)(1)(A) (ECF No. 1267). Seeking compassionate release, the defendant states that his medical conditions and the threat of COVID-19 constitute an extraordinary and compelling reason for his immediate release.

The government opposes the defendant's motion, arguing that the defendant has not shown an extraordinary and compelling reason for compassionate release. Additionally, the government asserts that the statutory sentencing factors under 18 U.S.C. § 3553(a) do not weigh in favor of the defendant's release. The defendant did not file a reply to the government's response.

The court has carefully considered the record before it and conducted an individualized analysis of the facts and issues raised by the parties. For the reasons which follow, the defendant's motion is respectfully denied.

STANDARD OF REVIEW

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *See United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson*, 952 F.3d 492 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *See Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence. It was originally adopted as part of the Sentencing Reform Act of 1984.

On December 21, 2018, the First Step Act was signed into law. Broadly, the Act's goals were to reform federal prisons and sentencing laws to reduce recidivism, decrease the federal inmate population, and maintain public safety. The First Step Act also expanded the existing compassionate release provisions of federal law by allowing an inmate to move for compassionate release himself, rather than allowing only the Director of the Bureau of Prisons (BOP) to do so. The relevant portion of the First Step Act, codified at 18 U.S.C. § 3582(c)(1)(A), as amended by § 603(b) of the First Step Act, provides:

> [T]he court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever

is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) [of Title 18] to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

By its terms, § 3582(c)(1)(A) permits the court to reduce the defendant's term of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if the court first finds that (i) extraordinary and compelling reasons warrant such a reduction; and (ii) such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. In addition, a district court may not grant a sentence reduction under § 3582(c)(1)(A) without considering the § 3553 factors to the extent they are applicable. *United States v. Kibble*, 992 F.3d 326, 332 (4th Cir. 2021).

In *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), the Fourth Circuit agreed with the Second Circuit in *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020) and found that there is, as of now, no "applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A)." As a result, district courts are "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." *McCoy*, 981 F.3d at 284 (citing *Brooker*, 976 F.3d at 230); *see also, Kibble*, 992 F.3d at 331.

A defendant's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). Also, the defendant bears the burden

3

to establish that he or she is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

When deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court generally proceeds in three steps. *See United States v. High*, 997 F.3d 181, 185–86 (4th Cir. 2021). First, the court determines whether "extraordinary and compelling reasons" support a sentence reduction. Next, the court considers whether a sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission. As noted previously in this order and as set out in *McCoy*, because there is no applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A), district courts are empowered to consider any extraordinary and compelling reason for release that a defendant might raise. Finally, if the court finds that extraordinary and compelling reasons warrant relief, the court must consider the § 3553(a) factors in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment.

Even if the defendant meets the eligibility criteria for compassionate release, this court retains discretion as to whether to grant relief. *See* 18 U.S.C. § 3582(c)(1)(A) (providing the court *may* reduce the term of imprisonment) (emphasis added).

### *Exhaustion of Administrative Remedies*

Before a court may consider a defendant's motion for compassionate release, the defendant must have completed the initial step of requesting that the BOP bring a motion on

their behalf. The defendant may file a motion with the court after (1) fully exhausting all administrative rights to appeal; or (2) after the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A). *See United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021).

It appears to this court that the defendant has fully exhausted his administrative remedies, which the government does not dispute. Therefore, the court will proceed to review the matter on the merits.

## DISCUSSION

The mere existence of the COVID-19 pandemic—which poses a threat to every non-immune individual in the world—cannot independently provide a basis for a sentence reduction or justify compassionate release. However, COVID-19 is certainly relevant to the court's analysis of a § 3582(c)(1)(A) motion for compassionate release. If a defendant has a chronic medical condition that has been identified by the Centers for Disease Control (CDC) as elevating the inmate's risk of becoming seriously ill from COVID-19, it is possible that such medical condition could satisfy the extraordinary and compelling reasons standard. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

Rather, the threshold questions are whether the defendant has a particularized risk of contracting COVID-19 in prison and whether his medical conditions render him particularly

5

susceptible to severe illness or death should he contract the virus. *See United States v. Youngblood*, No. 20-7836, 2021 WL 4167105, at *2 (4th Cir. Sept. 14, 2021) (citing *United States v. High*, 997 F.3d 181, 185 (4th Cir. 2021)).

### *The Defendant's Motion for Compassionate Release*

The defendant contends that he suffers from the following medical ailments: Type 2 diabetes, kidney disease, and hypertension. He avers that his illness is terminal and that he has dialysis treatment three times a week for his kidney disease. He also complains that Butner Federal Medical Center (Butner) is operating on "code yellow COVID status" and that the necessary programs and classes needed are not being offered. Finally, he states that he tested positive for COVID 19 on November 22, 2022, but that he was not given the adequate treatment.[1] He seeks his immediate release or, alternatively, a sentence of home confinement.

The government first notes that because the defendant is dialysis dependent, he is classified as a Care Level 4 inmate. Level 4 inmates require services available only at a BOP Medical Referral Center (MRC), which provides significantly enhanced medical services and limited inpatient care. The government also asserts that the defendant's medical conditions are not terminal; do not substantially diminish his ability to provide self care in an institutional setting; or otherwise present extraordinary and compelling reasons to justify compassionate release.

---

[1] The defendant has been fully vaccinated against the virus. He contracted COVID-19 in November 2022 and successfully recovered.

Although the defendant suffers from a chronic illness, the government suggests the defendant's overall condition is stable. After his dialysis treatment, the defendant is returned to the general population, where he is ambulatory, has no medical restrictions, and has taken numerous educational class. He is able to provide self-care in the institutional setting and is not limited in his activities of daily living. Also, as the government notes, to the extent he complies with his treatments, the defendant's medical conditions can be and have been managed and well-controlled through routine, regularly scheduled appointments with clinicians for monitoring and well as management of his prescription medications.

The court will also note that the defendant's Presentence Report (PSR) (ECF No. 1199) prepared in January 2022, reveals that the defendant reported in the PSR that he was in poor health and suffered from cataracts, glaucoma, kidney disease, high blood pressure, and bone spurs on his feet. He also reported that he had scars on his stomach from gunshot wounds and bullet fragments are still inside his body.

It appears to this court that the defendant suffered from these medical ailments while he committed the crimes that resulted in his current sentence.[2] Thus, an argument could be made that it would be a perverse system of justice to allow a defendant to commit a crime and then, upon sentencing, argue for his immediate release, relying upon medical conditions

---

[2] The defendant moved for release pending his sentencing arguing that he suffers from significant pre-existing health conditions that put him at greater risk of complications or death if he were to contract COVID-19. Defense counsel also stated to the court that the defendant's incarceration was affecting his eligibility for a kidney transplant and that he was no longer on two transplant lists. This court denied the motion. Prior to the sentencing hearing held on April 12, 2022, the defendant moved for a downward departure or variance relying on his kidney disease under U.S.S.G. § 5H1.4 and § 5K2.0. The court denied the defendant's request for a variance.

that pre-dated his current offense. This would result in sentencing disparity because it would allow individuals who have severe medical problems the ability to seek leniency at sentencing, whereas healthy individuals who commit the same crimes do not have the same opportunity.

This court recognizes that the defendant's chronic kidney disease presents a risk factor that has been identified by the CDC as heightening the risk of severe injury or death from COVID-19. In any event, the court will afford the defendant the benefit of the doubt and assume that his current medical conditions, coupled with the ongoing COVID-19 pandemic, constitute an extraordinary and compelling reason for consideration of his release.

However, the court's inquiry does not end here. Under Fourth Circuit guidance, this court must now make an individualized assessment of the defendant's case, with specific attention to the factors under 18 U.S.C. § 3553(a), and also with particular review of the defendant's post-sentencing conduct while incarcerated.

Taking the § 3553(a) factors in order, the court finds as follows:

1. *Nature and Circumstances of the Offense*. The defendant was one of 16 defendants named in a 48-count Superseding Indictment (ECF No. 525) filed in the District of South Carolina on December 15, 2020. The defendant was named in the following Counts:

> Count 1: Conspiracy to possess with intent to distribute and to distribute heroin, cocaine, cocaine base, fentanyl, and oxycodone, all Schedule II controlled substances, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), and 846;

    Count 16:    Possession with intent to distribute a quantity of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) and 18 U.S.C. § 2;

    Count 18:    Possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A); and

    Count 37:    Use of a communication facility to facilitate the commission of felony under the Controlled Substances Act; and maintaining a stash house.

The defendant entered into a written amended Plea Agreement (ECF No. 937) in which he pleaded guilty to Count 16 of the Superseding Indictment. The government agreed to dismiss the remaining Counts. The Plea Agreement also contained a stipulation that the defendant's base offense level would not be greater than 28 and that an aggravating role enhancement should not apply.

The United States Probation Office prepared a Presentence Investigation Report (PSR) (ECF No. 1199) which determined the defendant's base offense level to be 30. The defendant received a 2-point adjustment for the use or threat of violence, a 2-point adjustment for possession of a firearm, and a 3-point adjustment for his role as a manager or supervisor. After allowing a 3-point reduction for acceptance of responsibility, the defendant's total offense level was 34. His subtotal criminal history score of 0 established a criminal history category of I, producing a Guideline range of 151 to 188 months.

The court determined the defendant's total offense level at 29,[3] with a criminal history

---

[3] The court adopted the stipulation made by the parties in the Amended Plea Agreement concerning the maximum base offense level of 28 and the inapplicability of an aggravating role enhancement. The court also overruled the defendant's objection to the application of the specific offense characteristic for use of violence based on the evidence presented at the sentencing hearing by the case agent. Accordingly, the base offense level became 28, the total offense level became 29, the criminal history category remained I, and the Guideline imprisonment range became 87 to 108 months. The court sentenced the defendant to the low end

9

category of I, producing a Guideline range of 87 to 108 months. This court sentenced the defendant to 87 months incarceration and 3 years of supervised release.

The defendant filed an appeal of his judgment and conviction which the Fourth Circuit Court of Appeals affirmed in its mandate of March 17, 2023 (ECF no. 1293).

2. *History and Characteristics of the Defendant.* The defendant is currently 37 years old. His projected release date is August 25, 2026. He is housed at Federal Medical Center in Butner in North Carolina.

The defendant was born in Richland County, South Carolina, was raised by his two parents, and he has five siblings. He has never been married and has no children. He received his high school diploma and attended a technical college, receiving a certificate in industrial technology. He has been unemployed and disabled since 2016. Prior to this time he worked various jobs. The defendant does not have an prior juvenile or adult convictions. He was a member of the Rolling 60s Crips in a position of leadership within the gang.

*Post Sentencing Conduct*

The BOP vocational/educational record reveals that the defendant has taken numerous educational courses. He does not have any disciplinary infractions since his incarceration.

The defendant's motion states that if released he would reside with his mother and father, that he has family that would assist him with his medical care, that he has medical insurance, and would need a CPAP and dialysis machine.

---

of the Guideline range of 87 months, to be followed by 36 months of supervised release.

3. *Seriousness of the Crimes*. As evidence by the historical facts set out in the PSR involving the defendant's instant conviction, this court regards the defendant's crime as very serious, fully supportive of a significant sentence.

4. *Whether the Sentence Promotes Respect for the Law and Just Punishment for the Offense*. The court finds a significant sentence is necessary to promote respect for the law and just punishment.

5. *Whether the Sentence Affords Adequate Deterrence to Criminal Conduct*. The court finds that a significant sentence is necessary to provide both general and specific deterrents.

6. *Whether the Sentence Protects the Public from Future Crimes of the Defendant*. The court finds that a significant sentence is necessary to protect the public from future crimes of the defendant. The court views this as an important factor to be addressed in considering the present motion.

7. *Need to Avoid Unwarranted Disparity*. Viewing the defendant's sentence as compared with the culpability of the defendant and his associates, his imposed sentence was and is in line with the other co-defendants.

CONCLUSION

For the foregoing reasons, the court determines that, even assuming the defendant has demonstrated an extraordinary and compelling reason for his release due to his medical conditions, his release at this time is not appropriate in light of this court's individualized assessment of the § 3553(a) factors, including the defendant's post-sentencing conduct. The

motion is respectfully denied.[4] (ECF No. 1267).

       IT IS SO ORDERED.

August 29, 2023
Columbia, South Carolina

Joseph F. Anderson, Jr.
United States District Judge

---

[4] To the extent that the defendant seeks to have this court direct the BOP to place the defendant in home confinement, this court is without authority to do so. The discretion to release a prisoner to home confinement lies solely with the Attorney General. See 18 U.S.C. § 3624(c)(2); 34 U.S.C. § 60541(g). The legislation recently passed by Congress to address the COVID-19 pandemic does not alter this. See CARES Act, Pub. L. No. 116-136, 134 Stat 281, 516 (2020) ("During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau [of Prisons], the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate.")