IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR No.: 3:20-453-JFA |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| WILLIE EDWARD SIMMONS | ) | |
| | ) | |

This matter is before the court on the defendant's second *pro se* motion for a reduction in his sentence pursuant to the First Step Act of 2018 and 18 U.S.C. § 3582(c)(1)(A) (ECF No. 1314). Seeking compassionate release, the defendant states that his terminal illness and serious medical conditions, along with his susceptibility to COVID-19, constitute an extraordinary and compelling reason for his immediate release.

The government opposes the defendant's motion, arguing that the defendant has not shown an extraordinary and compelling reason for compassionate release. Additionally, the government asserts that the statutory sentencing factors under 18 U.S.C. § 3553(a) do not weigh in favor of the defendant's release. The defendant did not file a reply to the government's response.

The court has carefully considered the record before it and conducted an individualized analysis of the facts and issues raised by the parties. For the reasons which follow, the defendant's motion is respectfully denied.

STANDARD OF REVIEW

Generally, a district court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C § 3582(c); *see Dillon v. United States*, 560 U.S. 817, 824 (2010). However, the commonly termed "compassionate release" provision of § 3582(c)(1)(A)(I) provides a statutory vehicle to modify a defendant's sentence. Under this statute, a district court may reduce a criminal defendant's sentence if the court finds extraordinary and compelling reasons that warrant such a reduction after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, as well as "applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

Prior to the First Step Act of 2018, courts could only consider compassionate release upon motion of the Bureau of Prisons (BOP). *See United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020). Today, however, § 3582(c)(1)(A) allows a defendant to file his own motion for compassionate release directly with the federal court so long as he first fully exhausts all administrative remedies.

Although Congress did not define "extraordinary and compelling" reasons in § 3582(c)(1)(A), the Sentencing Commission addressed the issue in a Policy Statement— United States Sentencing Guideline (U.S.S.G.) § 1B1.13—which provided the BOP with several categories of "extraordinary and compelling reasons" to consider. *McCoy*, 981 F.3d at 276.

For years following the passage of the First Step Act in 2018, the Sentencing Commission did not update § 1B1.13 to account for motions filed directly by defendants, meaning that the policy did not bind the courts when presented with a defendant's motion for compassionate release. *Id*. at 281– 82, 284.  A court, therefore, remained "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." *Id*. at 284 (quoting *United States v. Brooker*, 976 F.3d 228, 230 (2d Cir. 2020)) (alteration and emphasis in original).

However, on November 1, 2023, the Sentencing Commission, via Amendment 814, amended U.S.S.G. §1B1.13(b)(1)–(6) to address compassionate release motions brought directly by a defendant and to clarify and expand the list of what may qualify as an extraordinary and compelling reason to support a sentence reduction.  The qualification list falls into several categories: (1) the defendant's medical circumstances; (2) the defendant's age; (3) the defendant's family circumstances; (4) whether the defendant was the victim of certain abuse while in custody; (5) any other circumstances or combination of circumstances that, when considered by themselves or together with any of the preceding categories, are similar in gravity; and (6) an unusually long sentence if the defendant meets certain conditions.  The policy statement also recognizes the possibility that the BOP could identify other grounds that amount to extraordinary and compelling reasons.

Courts may not modify a sentence once imposed with few exceptions. 18 U.S.C. § 3582(c). One exception is compassionate release under 18 U.S.C. § 3582(c)(1)(A), as

amended by the First Step Act. To grant a compassionate release motion under § 3582(c)(1)(A)(i), the district court must conduct a two-step analysis. *United States v. Centeno-Morales*, 90 F.4th 274, 279 (4th Cir. 2024). First, the court must find "extraordinary and compelling reasons" warranting a sentence reduction. *United States v. Hargrove*, 30 F.4th 189, 194–95 (4th Cir. 2022). After a district court finds that an "extraordinary and compelling" reason for sentence modification exists, it must then evaluate the relevant § 3553(a) factors. *Id*. at 195.

When deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court generally proceeds in three steps. First, the court determines whether extraordinary and compelling reasons support a sentence reduction. Next, the court considers whether a sentence reduction is consistent with the applicable policy statements issued by the Sentencing Commission. Finally, if the court finds that an extraordinary and compelling reason warrants relief, the court must consider the § 3553(a) factors in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment. *See United States v. High*, 997 F.3d 181, 185–86 (4th Cir. 2021); *United States v. Kibble*, 992 F.3d 326 (4th Cir. 2021). The court must also determine that such a reduction would be consistent with "applicable policy statements issued by the Sentencing Commission." *United States v. Davis*, 99 F.4th 647, 654 (4th Cir. 2024).

Even if the defendant meets the eligibility criteria for compassionate release, this court retains discretion as to whether to grant relief. *See* 18 U.S.C. § 3582(c)(1)(A) (providing the court *may* reduce the term of imprisonment) (emphasis added).

Finally, the defendant bears the burden to establish that he is eligible for a sentence reduction under § 3582. *Centeno-Morales*, 90 F.4th at 279.

### *Exhaustion of Remedies*

Before a court may consider a defendant's motion for compassionate release, the defendant must have completed the initial step of requesting that the BOP bring a motion on his behalf. The defendant may file a motion with the court: (1) after fully exhausting all administrative rights to appeal; or (2) after the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. *See United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021), 18 U.S.C. § 3582(c)(1)(A).

The government acknowledges that the defendant has exhausted his administrative remedies when his request to the Warden was denied on February 12, 2024. Thus, the court will proceed to review the matters on the merits.

### DISCUSSION

The mere existence of the COVID-19 pandemic—which poses a threat to every non-immune individual in the world—cannot independently provide a basis for a sentence reduction or justify compassionate release. However, COVID-19 is certainly relevant to the court's analysis of a § 3582(c)(1)(A) motion for compassionate release. If a defendant has a chronic medical condition that has been identified by the Centers for Disease Control (CDC) as elevating the inmate's risk of becoming seriously ill from COVID-19, it is possible that such medical condition could satisfy the extraordinary and compelling reasons standard.

As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

Rather, the threshold questions are whether the defendant has a particularized risk of contracting COVID-19 in prison and whether his medical conditions render him particularly susceptible to severe illness or death should he contract the virus. *See United States v. Youngblood*, No. 20-7836, 2021 WL 4167105, at *2 (4th Cir. Sept. 14, 2021) (citing *United States v. High*, 997 F.3d 181, 185 (4th Cir. 2021)).

*The Defendant's Medical Conditions*

The defendant contends that he is presently on dialysis three times a week for his chronic kidney disease. He contends that his health has deteriorated to a major degree.

The government first asserts that the defendant's medical conditions of Type 2 diabetes, hypertension, and kidney disease cannot independently or in combination with his kidney disease be considered a terminal illness. Nor would these chronic but manageable conditions alone constitute extraordinary and compelling circumstances.

The government further argues that although he suffers from chronic illnesses, the defendant's overall condition is stable. The defendant continues to receive consistent, stabilizing care for his conditions including dialysis treatment and medication at FMC Butner. The government notes that the defendant is housed in the general population, he is ambulatory, has no medical restrictions, and has taken several educational classes. As a

6

result, the government contends the defendant is able to provide self-care in the institutional setting and is not limited in his activities of daily living.

The defendant is 50 years of age. Indeed, his chronic medical conditions are well documented in the record and when he was sentenced by this court. The Presentence Report (PSR) (ECF No. 1199), prepared in January 2022, noted that the defendant was in poor health and suffered from cataracts, glaucoma, kidney disease, high blood pressure, and bone spurs on his feet. He also reported that he had scars on his stomach from gunshot wounds and bullet fragments are still inside his body.

It appears to this court that the defendant suffered from these medical ailments while he committed the crimes that resulted in his current sentence.[1] Thus, an argument could be made that it would be a perverse system of justice to allow a defendant to commit a crime and then, upon sentencing, argue for his immediate release, relying upon medical conditions that pre-dated his current offense. This would result in sentencing disparity because it would allow individuals who have severe medical problems the ability to seek leniency at sentencing, whereas healthy individuals who commit the same crimes do not have the same opportunity.

---

[1] The defendant moved for release pending his sentencing arguing that he suffered from significant pre-existing health conditions that put him at greater risk of complications or death if he were to contract COVID-19. Defense counsel also stated to the court that the defendant's incarceration was affecting his eligibility for a kidney transplant and that he was no longer on two transplant lists. This court denied the motion. Prior to the sentencing hearing held on April 12, 2022, the defendant moved for a downward departure or variance relying on his kidney disease under U.S.S.G. § 5H1.4 and § 5K2.0. The court denied the defendant's request for a variance.

While it is clear that the defendant has serious existing medical conditions, the defendant fails to provide any documentation showing how his complaints of the dialysis machines not being properly cleaned or how the administration of his dialysis treatment specifically caused or exacerbated his existing medical conditions to deteriorate. The defendant is of course entitled to litigate these alleged conditions of confinement issues through a different avenue such as a § 1983 action in the District of his confinement. Accordingly, the court finds this claim is without merit.

The court will give the defendant the benefit of the doubt and again assume that his medical conditions, with the exception of his claims regarding his dialysis treatment, constitute an extraordinary and compelling reason for consideration of his release. This court recognizes that the defendant's chronic kidney disease presents a risk factor that has been identified by the CDC as heightening the risk of severe injury or death from COVID-19. The court will note, however, that on May 11, 2023, the United States Department of Health and Human Services ended the federal Public Health Emergency for COVID-19. The public health emergency prong in U.S.S.G. § 1B1.13 requires that the emergency be declared by an appropriate governmental authority. As of the date of this order, there is no new declared emergency involving the BOP or the public in general.

This determination, however, does not end the court's inquiry. Under Fourth Circuit guidance, the court must again examine the factors under 18 U.S.C. § 3553(a), together with the defendant's post-sentencing conduct, and any other mitigating factors, to determine if the defendant's immediate release is appropriate.

Taking the § 3553(a) factors in order, the court finds as follows:

1. *Nature and Circumstances of the Offense.* The defendant was one of 16 defendants named in a 48-count Superseding Indictment (ECF No. 525) filed in the District of South Carolina on December 15, 2020. The defendant was named in the following Counts:

Count 1: Conspiracy to possess with intent to distribute and to distribute heroin, cocaine, cocaine base, fentanyl, and oxycodone, all Schedule II controlled substances, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), and 846;

Count 16: Possession with intent to distribute a quantity of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) and 18 U.S.C. § 2;

Count 18: Possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A); and

Count 37: Use of a communication facility to facilitate the commission of felony under the Controlled Substances Act; and maintaining a stash house.

The defendant entered into a written amended Plea Agreement (ECF No. 937) in which he pleaded guilty to Count 16 of the Superseding Indictment. The government agreed to dismiss the remaining Counts. The Plea Agreement also contained a stipulation that the defendant's base offense level would not be greater than 28 and that an aggravating role enhancement should not apply.

The United States Probation Office prepared a Presentence Investigation Report (PSR) (ECF No. 1199) which determined the defendant's base offense level to be 30. The defendant received a 2-point adjustment for the use or threat of violence, a 2-point

adjustment for possession of a firearm, and a 3-point adjustment for his role as a manager or supervisor. After allowing a 3-point reduction for acceptance of responsibility, the defendant's total offense level was 34. His subtotal criminal history score of 0 established a criminal history category of I, producing a Guideline range of 151 to 188 months.

The court determined the defendant's total offense level at 29,[2] with a criminal history category of I, which produced a Guideline range of 87 to 108 months. This court sentenced the defendant to 87 months incarceration and 3 years of supervised release.

The defendant filed an appeal of his judgment and conviction which the Fourth Circuit Court of Appeals affirmed in its mandate of March 17, 2023 (ECF No. 1293).

2. *History and Characteristics of the Defendant.* The defendant is currently 38 years old. His projected release date is August 25, 2025. He is housed at Federal Medical Center in Butner in North Carolina.

The defendant was raised by his two parents, and he has five siblings. He has never been married and has no children. He received his high school diploma and attended a technical college, receiving a certificate in industrial technology. He has been unemployed and disabled since 2016. The defendant does not have an prior juvenile or adult convictions. He was a member of the Rolling 60s Crips in a position of leadership within the gang.

---

[2] The court adopted the stipulation made by the parties in the Amended Plea Agreement concerning the maximum base offense level of 28 and the inapplicability of an aggravating role enhancement. The court also overruled the defendant's objection to the application of the specific offense characteristic for use of violence based on the evidence presented at the sentencing hearing by the case agent. Accordingly, the base offense level became 28, the total offense level became 29, the criminal history category remained I, and the Guideline imprisonment range became 87 to 108 months. The court sentenced the defendant to the low end of the Guideline range of 87 months, to be followed by 36 months of supervised release.

*Post Sentencing Conduct*

The BOP vocational/educational records reveal that the defendant has taken numerous educational courses. Commendably, he does not have any disciplinary infractions since his incarceration.

Within the defendant's motion, his proposed release plan states that if released he would reside with his mother and father; he has family that would assist him with his medical care; he has medical insurance; and he would need a walker.

3. *Seriousness of the Crimes*. As evidenced by the historical facts set out in the PSR involving the defendant's instant conviction, this court regards the defendant's crime as very serious, fully supportive of a significant sentence.

4. *Whether the Sentence Promotes Respect for the Law and Just Punishment for the Offense*. The court finds a significant sentence is necessary to promote respect for the law and just punishment.

5. *Whether the Sentence Affords Adequate Deterrence to Criminal Conduct*. The court finds that a significant sentence is necessary to provide both general and specific deterrents.

6. *Whether the Sentence Protects the Public from Future Crimes of the Defendant.* The court finds that a significant sentence is necessary to protect the public from future crimes of the defendant.

7. *Need to Avoid Unwarranted Disparity*. Viewing the defendant's sentence as compared with the culpability of the defendant and his associates, his imposed sentence was and is in line with the other co-defendants.

## CONCLUSION

For the foregoing reasons, the court determines that, even assuming the defendant has demonstrated an extraordinary and compelling reason for his release due to his medical conditions, his release is not appropriate in light of this court's individualized assessment of the § 3553(a) factors, including the defendant's post-sentencing conduct. The motion is respectfully denied (ECF No. 1314).

IT IS SO ORDERED.

March 12, 2025  
Columbia, South Carolina

Joseph F. Anderson, Jr.  
United States District Judge